UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br>v.<br>BRIAN FOX,<br><br>    Defendant. | Case No. 3:15-cr-00061-HDM-WGC<br>Case No. 3:19-cv-00371-HDM<br><br>ORDER |

Before the court is defendant Brian Fox's ("Fox") motion to vacate, correct, or set aside sentence pursuant to 28 U.S.C. § 2255 (ECF No. 856). The government has opposed (ECF No. 868), and Fox has replied (ECF Nos. 885 & 887).

**I. Background**

On July 28, 2015, Fox was arrested by state authorities when he was found in possession of marijuana and 314 grams of pure methamphetamine, as confirmed by a DEA laboratory. He posted bail on August 3, 2015, and two days later was charged in a federal indictment with several controlled-substances-related offenses. (ECF No. 1). Although an arrest warrant was issued, it was nearly two years before Fox was apprehended. (ECF No. 545).

On November 29, 2017, pursuant to an agreement, Fox entered a plea to guilty to Count Eight of the second superseding indictment.[1] Count Eight charged possession with intent to distribute at least 50 grams of actual methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii). (ECF Nos. 221, 601 & 606). Pursuant to the agreement, the remaining charges against Fox would be dismissed and the parties were free to argue for or against application of the obstruction of justice enhancement under U.S.S.G. § 3C1.1. (ECF No. 601 at 6). The agreement also provided that the government would recommend a low-end sentence so long as Fox did not seek a sentence below his Guidelines range as calculated by the court. The agreement specifically provided that if Fox chose to argue for a below-Guidelines sentence, including for the statutory minimum of ten years, the government would not be bound by that promise. (ECF No. 601 at 5, 10).

At the time Fox changed his plea, he acknowledged that he was pleading guilty to possession with intent to distribute at least 50 grams of actual methamphetamine, that the government would have to prove he had possessed at least 50 grams of actual methamphetamine, and that he in fact possessed at least 50 grams of methamphetamine. (ECF No. 720 (Tr. 4-5, 7-8, 25)). He further agreed that the facts contained in his plea agreement on pages 3 to 4 were true to the best of his knowledge. (*Id.* at 8). The court explained to Fox that in entering his plea, he was waiving several

---

[1] Before his arrest, the indictment was superseded two times. Fox was charged in in Counts One, Two, Eight and Nine of the second superseding indictment. (ECF No. 221).

2

important Constitutional rights, including any defenses he might have had to the offense (*Id.* at 5-6).

Fox indicated that he understood that while he was free to argue for a below-Guidelines sentence, the government would not be bound to recommend a low-end sentence if he did so. (*Id.* at 15-16). He understood that the obstruction of justice enhancement might apply, that his adjusted offense level could be 29 or 31, and that his Guidelines range could be as high as 188 to 235 months if he were to receive the enhancement and have a criminal history category of VI. (*Id.* at 8-9, 12). The court advised Fox that his criminal history category was likely to be high due to his record. (*Id.* at 13).

Fox also acknowledged -- and the court twice explained – the appellate waiver, and the fact that under it Fox would not be allowed to appeal any sentence that fell within or below the Guidelines range. (*Id.* at 19-21, 23-24).

The court repeatedly asked Fox if he read and understood the plea agreement or if he had any questions about the agreement, and each time Fox indicated he had no questions and understood everything. (*Id.* at 3, 4, 12-13, 19). Fox indicated -- five separate times -- that no one, including his counsel, had promised him anything other than what was in the agreement itself. (*Id.* at 3, 19, 21, 22). And Fox acknowledged that he was entering his plea freely and voluntarily, (*id.* at 21-22), and that no one had threatened or forced him to plead guilty, (*id.* at 3, 22). The court accepted the guilty plea as having been entered freely and voluntarily.

Prior to sentencing, defense counsel filed a memorandum in which he argued for a sentence of ten years. (ECF No. 665). While counsel also asserted that "Fox was not actively, deceitfully, and strategically hiding from the law as the PSR seems to indicate and as the United States will possibly argue at sentencing," he did not explicitly raise any objection to the obstruction of justice enhancement. (*Id.* at 3). Nor, at sentencing, did counsel make such an argument. (ECF No. 721 (Tr. 2)). Instead, counsel repeated his arguments in favor of a ten-year sentence. (*See id.* at 3). During allocution, Fox himself stated: "I'm asking that you sentence me to the 10 years." (*Id.* at 4).

The government, on the other hand, argued for application of the obstruction enhancement, and, because Fox was seeking a sentence below any applicable Guidelines range, a high-end sentence. (*Id.* at 5-7).

The court agreed that the enhancement was appropriate because

> the evidence is quite clear that [Fox] was well aware of the charges. He had been arrested, been picked up by the State authorities, and then he was indicted. He was well aware of the charges. He then absconded, left the jurisdiction. And it took almost two years, not quite two years, but almost two years before he was apprehended. There was a substantial effort on the part of the Marshal's Office to locate Mr. Fox, to bring him back. Other defendants had been before the Court for some time who were jointly involved in the conspiracy and conduct that was the subject of substantial litigation before this court, and Mr. Fox did not voluntarily surrender himself at any point during that time. It required the officials to locate him and then bring him back into custody to face the charges here. So, there is absolutely, crystal clear evidence that the adjustment for obstruction of justice is appropriate in this case.

(*Id.* at 9-10). Calculating Fox's total offense level as 31, with a criminal history category of five, the court found a Guidelines

range of 168 months to 210 months applied. (*Id.* at 10-11). The court concluded that a sentence in the mid-range was appropriate, and therefore sentenced Fox to 174 months' imprisonment. (*Id.* at 13).

Five days after entry of judgment, Fox filed a *pro se* notice of appeal. (ECF No. 670). Following appointment of new counsel for purposes of the appeal, the appeal was dismissed on counsel's representation that no grounds for relief existed due to the valid appellate waiver. (ECF No. 807). The instant § 2255 motion followed.

**II. Standard**

Pursuant to 28 U.S.C. § 2255, a federal inmate may move to vacate, set aside, or correct his sentence if: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. *Id.* § 2255(a).

Fox raises primarily claims of ineffective assistance of counsel. Ineffective assistance of counsel claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner must satisfy two prongs to obtain habeas relief—deficient performance by counsel and prejudice. 466 U.S. at 687. With respect to the performance prong, a petitioner must carry the burden of demonstrating that his counsel's performance was so deficient that it fell below an "objective standard of reasonableness." *Id.* at 688. "'Judicial scrutiny of counsel's performance must be highly deferential,' and 'a court must indulge

a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009) (citation omitted). In assessing prejudice, the court "must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent [counsel's] errors." *Strickland*, 466 U.S. at 696.

**III. Analysis**

Fox advances, in effect, nine grounds for relief:[2] (1) trial counsel was ineffective for failing to file a notice of appeal; (2) trial counsel was ineffective for failing to communicate with Fox after sentencing; (3) trial counsel was ineffective for failing to challenge the obstruction of justice enhancement; (4) trial counsel was ineffective for failing to argue that his criminal history category was improperly calculated based on an allegedly nonexistent dishonorable discharge; (5) trial counsel was ineffective for failing to argue that the government had breached the plea agreement by arguing for a high-end Guidelines sentence; (6) trial counsel ineffectively advised Fox to ask for a 10-year sentence; (7) the court violated Federal Rule of Criminal Procedure when it failed to ask Fox if he had gone over his presentence report ("PSR") with his attorney; (8) his plea, including his appellate waiver, was not knowing and voluntary; and (9) trial

---

[2] The court numbers the claims in the order they appear in Fox's memorandum and supplement and not as listed on the § 2255 form. That is, Ground Five of the form is listed as a claim that appellate counsel was ineffective. (*See* ECF No. 856 at 9). However, the fifth ground for relief in the memorandum asserts trial counsel was ineffective for breaching the plea agreement. Appellate counsel's concession that the appellate waiver was valid and precluded consideration of Fox's claims on appeal is more appropriately addressed in the context of Ground Eight.

6

counsel was ineffective for failing to require the government to produce a lab report of the drugs he was charged with possessing. (*See* ECF No. 856).[1]

A. Ground One

In his first ground for relief, Fox asserts that trial counsel was ineffective for failing to file a notice of appeal. He argues that counsel abandoned him after sentencing and ignored multiple requests to communicate, so he had to file his own *pro se* notice of appeal.

Despite Fox's argument that prejudice is presumed where counsel failed to file a notice of appeal, that presumption cannot apply where, as here, the defendant obtained a timely appeal. There is no reasonable probability of a different outcome if counsel had not been deficient – that is, if he had filed a notice of appeal. That is because Fox had already obtained a timely appeal, albeit on his own initiative. Because Fox cannot demonstrate prejudice, he is not entitled to relief on the first ground of his motion.

B. Ground Two

In his second ground for relief, Fox asserts that trial counsel failed to communicate with him throughout the proceedings and after sentencing, and merely pushed Fox to enter a guilty plea. He asserts that communication would have enabled him to have a broader understanding of the proceedings and more opportunity to effectively communicate.

Fox does not identify any specific prejudice he suffered from counsel's alleged deficient performance. He alleges only that he would have better understood the proceedings. This is insufficient

7

to allege – or prove – that the outcome of the proceedings was reasonably likely to have been different had counsel better communicated. Fox is not therefore entitled to relief on the second ground of his motion.

C. Ground Three

In his third ground for relief, Fox asserts ineffective assistance of counsel and violation of his due process and equal protection rights based on counsel's failure to argue against, and the court's application of, the two-level obstruction of justice enhancement. Fox argues that if counsel had argued this point, there is a reasonable probability his adjusted offense level would have been 29 instead of 31 and, consequently, that his sentencing range would have been lower.

Under United States Sentencing Guidelines § 3C1.1, a two-level enhancement applies if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and … the obstructive conduct related to … the defendant's offense of conviction and any relevant conduct; or … a closely related offense." "[A]voiding or fleeing from arrest" is generally not obstructive conduct under § 3C1.1. *Id.* § 3C1.1 app. n.5(D). Escaping from custody or willfully failing to appear for a judicial proceeding is obstructive conduct. *Id.* § 3C1.1 app. n.4(E).

The Ninth Circuit has held that the enhancement was not properly applied where the defendants fled before arrest, although they remained on the lam for nine months and knew they were wanted during this time. *United States v. Madera-Gallegos*, 945 F.2d 264,

268 (9th Cir. 1991). The enhancement was similarly improper where the defendant had fled the state while he was being investigated, but before he was indicted, and remained out of state – intentionally using aliases to avoid detection – while his codefendants were arraigned, pleaded guilty or went to trial. *United States v. Stites*, 56 F.3d 1020, 1026 (9th Cir. 1995), *as amended* (Aug. 2, 1995). In contrast, the enhancement was properly applied where the defendant had already been arrested for the offense, was told he was a suspect in a criminal case and "knew that he was expected to turn himself in, and then, after fleeing, 'played a cat-and-mouse game of avoiding the authorities.'" *United States v. Madera-Gallegos*, 945 F.2d 264, 268 (9th Cir. 1991) (discussing *United States v. Mondello*, 927 F.2d 1463, 1467 (9th Cir. 1991)).

For the purpose of § 3C1.1, "'custody' need only involve some degree of official control over a defendant such that a subsequent evasion amounts to more than mere 'avoiding or fleeing from arrest.' Stated differently, the defendant must have been submitted, willfully or otherwise, to the due process of law before the obstruction adjustment can obtain." *United States v. Draper*, 996 F.2d 982, 985-86 (9th Cir. 1993). Thus, the enhancement is properly applied where the defendant absconded after being released on bond. *See United States v. Giang*, 2 F. App'x 837, 838 (9th Cir. 2001) ("The record shows, however, that Giang left the country after (1) signing a document indicating that he was being released pursuant to a bond; (2) surrendering a passport in anticipation of being released on bond; and (3) attending proceedings wherein the constraints of bond release had been

9

discussed. In light of these facts, the district court did not clearly err by imposing the obstruction of justice enhancement.").

Fox posted bail after his arrest by state authorities for the conduct underlying this prosecution, and then he left the jurisdiction. Over the course of the next two years, he moved back and forth among three states, using different phone numbers and, possibly, a fake I.D.

Fox argues that because he was not under federal indictment when he fled and there is no evidence he knew of the federal charges, his actions were nothing more than avoiding arrest, as in *Madera-Gallegos* and *Stites*. The government argues that *Mondello* is controlling because Fox fled after posting bail and engaged in actions to avoid detection by authorities for nearly two years.

As in *Mondello*, Fox had been arrested before he fled, and he made a concerted effort thereafter to avoid detection. The fact Fox was arrested by state authorities and had not been federally indicted when he fled is not dispositive. *See United States v. Lato*, 934 F.2d 1080, 1082-83 (9th Cir. 1991) ("The following commentary to section 3C1.1 supports the view that there is no state-federal distinction for obstruction of justice: 'This section provides a sentence enhancement for a defendant who engages in conduct calculated to mislead or deceive authorities....' . . . . There is no hint that the term 'authorities' was used with reference to federal rather than state officials."); *see also United States v. Roberts*, 243 F.3d 235, 238-40 (6th Cir. 2001). Although Fox's apprehension for his wrongdoing was initially conducted by state authorities, he was eventually prosecuted for that conduct on federal charges instead. A sufficient nexus

therefore exists between Fox's obstructive conduct and the instant offense. Application of the obstruction enhancement under these circumstances was accordingly proper.

Because the obstruction enhancement was properly applied, Fox can show neither deficient performance nor prejudice. As such, Fox is not entitled to relief on his third ground for relief.

D. Ground Four

In his fourth ground for relief, Fox argues that his trial and appellate attorneys were ineffective for failing to argue that his criminal history category was improperly calculated based on a nonexistent dishonorable discharge. Fox asserts there was no dishonorable discharge reflected in his PSR. Fox refers to his conviction in paragraph 80 of the PSR, from May 2010, arguing that it shows he was honorably discharged from probation for that offense. (*See* ECF No. 856 at 27 (referencing judgment of May 25, 2010)).

Fox's argument is based first on an incorrect reading of his PSR. The May 2010 conviction that he references (ECF No. 856 at 27) does in fact reflect that he was dishonorably discharged from probation. Fox cannot therefore show deficient performance. While it is true that Fox was *honorably* discharged from another of his convictions -- that reflected in paragraph 77 -- for which he received three criminal history points, whether the discharge was dishonorable or not plays no role in the number of points attributable to the conviction. (*See* U.S.S.G. §§ 4A1.1(a)(1) and 4A1.2(b)(1)). Thus, Fox cannot show either deficient performance or prejudice from his attorneys' failure to object on these grounds and is not entitled to relief on the fourth ground of his motion.

11

E. Ground Five

In his fifth ground for relief, Fox argues that the government breached the plea agreement by recommending a sentence above the low end of the Guidelines range, and that counsel was ineffective for failing to argue as much. The government argues that there was no breach of the plea agreement because the agreement explicitly allowed the government to argue for a higher sentence if Fox sought a below Guidelines sentence.

Ground Five is without merit. As discussed above, the plea agreement specifically provided that if Fox chose to argue for a below-Guidelines sentence, the government was released from its obligation to recommend a low-end sentence. It was neither a breach by the defense to argue for a lower sentence nor a breach by the government to argue for a higher sentence once he did. Fox's attorneys did not therefore perform deficiently for failing to argue that the government had breached the plea agreement nor, for the same reason, was Fox prejudiced by this failure.

Fox is not entitled to relief on his fifth ground for relief.

F. Ground Six

In his sixth ground for relief, Fox argues that trial counsel was ineffective for advising him to seek a 10-year sentence despite knowing that this would be a breach of the plea agreement and would allow the government to argue for a higher than low-end sentence.

As just noted, it was not a breach of the plea agreement for counsel to seek a below-Guidelines sentence. It was a choice, however, that did open the defense up to the possibility that the government would seek a high-end sentence, which is what ultimately happened. In order to obtain relief, Fox must therefore show that

12

counsel's strategic decision in this regard constituted deficient performance.

"[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. There is no indication here that counsel made a less than reasonable investigation. And it is clear that counsel specifically negotiated for the right to argue for the minimum sentence, as the plea agreement explicitly carves out such a possibility. It was not an unreasonable strategic decision for counsel to advise Fox to seek a ten-year sentence from this court and to argue for the same, despite the fact that it allowed the government to argue for a higher sentence. Fox has not therefore established ineffective assistance of counsel based on counsel's decision to seek a ten-year sentence.

Moreover, to the extent Fox argues that he was misled by counsel into believing that seeking a ten-year sentence would not result in a breach of the plea agreement, the contention is not well taken. At Fox's change of plea, the court thoroughly explained the sentencing possibilities to Fox, including that his range could be as high as 188 to 235 months and that if he chose to argue for a ten-year sentence, the government would not be bound to recommend a low-end sentence. Fox indicated repeatedly that he understood. Under these circumstances, the court does not find credible Fox's contention that he did not understand the ramifications of seeking a ten-year sentence at sentencing. He has not, therefore, shown either prejudice or deficient performance.

Fox is not entitled to relief on his sixth ground for relief.

G. Ground Seven

In his seventh ground for relief, Fox argues that the court failed to ensure that Fox had gone over his PSR with his attorney, resulting in a violation of Federal Rule of Civil Procedure 32(i)(1)(A). Fox argues he did not go over the PSR with his attorney. If he had, he argues, he would have discovered that he incorrectly received three additional criminal history points for a dishonorable discharge that did not exist.

To the extent Fox asserts trial and appellate counsel were ineffective for failing to raise this point, the argument is without merit. Fox cannot demonstrate prejudice, for the reasons set forth with respect to Ground Four. Furthermore, appellate counsel was not deficient in failing to raise the issue because Fox had waived any sentencing errors as part of his plea agreement. *See* (ECF No. 601 at 14); *United States v. Savage*, 406 Fed. App'x 220, 221 (9th Cir. 2010) (unpublished opinion) (defendant's waiver of his right to appeal "'the manner in which [his] sentence [was] determined' . . . plainly encompasses the district court's alleged errors under Rule 32(i)(1)(A). . . .").

To the extent Fox argues that he is entitled to relief based on the court's error, he would not be entitled to relief -- even assuming he had not waived this claim as part of his plea agreement. *See Hill v. United States*, 368 U.S. 424, 426 (1962) (holding that, without more, a technical violation of Rule 32 "is not of itself an error that can be raised by collateral attack."); *Cavines v. United States*, 2008 WL 4372712, at *6 (N.D. Ill. Mar. 25, 2008); *United States v. Reyes*, 2006 WL 3289945, at *2 (W.D.

Mich. Nov. 13, 2006); *Taylor v. United States*, 2006 WL 1745104, at *1 (E.D. Tenn. June 21, 2006). Collateral relief for a technical violation of Rule 32 is available only where the defendant has been prejudiced by the court's error. *Peguero v. United States*, 526 U.S. 23, 27-28 (1999). Because, as discussed above, Fox has not demonstrated that his criminal history category was incorrectly calculated, he has not demonstrated that he suffered prejudice. As such, Fox is not entitled to relief on his seventh ground for relief.

H. Ground Eight

In Fox's eighth ground for relief,[3] Fox argues that his appellate waiver was not knowing and voluntary. Fox argues that neither the court nor his attorney fully explained the appellate waiver. His allegations also appear to suggest a claim that his plea was not knowing and voluntary, because he asserts he was misled by his counsel into believing he would receive a ten-year sentence and bullied by the government into entering a plea.

The government argues that Fox's allegations are completely belied by his responses to the court's canvass at the time he changed his guilty plea. The government argues that Fox's assertion that he was confused by the proceedings is particularly unbelievable in light of his many contacts with, and convictions through, the criminal justice system.

As discussed previously, the court engaged in a significant canvass of Fox, in which it repeatedly asked Fox if he understood the proceedings or if he had any questions, and in which Fox

---

[3] The eighth ground for relief appears in Fox's supplement, which he identifies as an addendum to Ground Five. (ECF No. 856 at 34-40). As previously noted, the court construes this claim as Ground Eight.

15

repeatedly advised that he had not been promised anything to enter his plea or threatened to do so.

"Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *see also United States v. Ross*, 511 F.3d 1233, 1236 (9th Cir. 2008) ("Statements made by a defendant during a guilty plea hearing carry a strong presumption of veracity in subsequent proceedings attacking the plea.").

Fox repeatedly indicated that he understood the plea agreement in all of its relevant particulars and indicated that no one had promised him anything to sign the agreement. His assertions now that his plea, including the appellate waiver, was not knowing or voluntary are not well taken. The court is likewise not persuaded that Fox did not understand that arguing for a sentence below ten years would open him up to an argument by the government for a high-end sentence, as that possibility was explicitly discussed with him during the canvass, and Fox stated that he understood. Fox therefore cannot establish either that his plea and appellate waiver was unknowing or involuntary, that he was bullied into entering the plea, or that he was misled by counsel to do so.

Appellate counsel was not, moreover, ineffective in conceding the validity of the appellate waiver. Not only did the plea agreement set forth the waiver, the court went over the waiver with Fox in detail, specifically advising him that the only thing

16

he would be allowed to appeal would be an above-Guidelines sentence. Appellate counsel was not deficient in conceding the appellate waiver's validity as to any and all claims, nor did counsel's conduct cause Fox prejudice.

Fox is not entitled to relief on his eighth ground for relief.

I. Ground Nine

In his ninth ground for relief, Fox asserts that trial counsel was ineffective for failing to require the government to produce a lab report of the drugs seized from his vehicle. He argues that the drugs were of poor quality and thus he may not have possessed at least fifty grams of actual methamphetamine.

The government argues that because Fox admitted to possessing 314 grams of pure methamphetamine, he cannot demonstrate deficient performance or prejudice.

Fox has not established that had counsel obtained a lab report he would not have entered a plea of guilty to Count Eight of the second superseding indictment. Moreover, he has not established that counsel was deficient for failing to seek a report. The DEA's lab report reflected that Fox was found in possession of 314 grams of pure methamphetamine. Fox has not established that reasonable counsel would have pursued further testing to determine if the amount of actual methamphetamine in this sample fell below 50 grams, particularly where the government was offering a plea agreement that dismissed the other three charges pending against Fox. Fox therefore cannot demonstrate deficient performance, either.

Fox is not entitled to relief on his ninth ground for relief.

J. Other Assertions

17

The motion contains several additional assertions not obviously tied to any ground for relief. For example, Fox argues that the court injected itself into the plea negotiations by expressing its opinion on the applicable sentencing range during the sentencing hearing. This claim is without merit. The court's opinion as to the applicable sentencing range after the defendant had already entered a change of plea does not constitute involvement in plea negotiations.

Fox also argues his offense level was improperly calculated to be level 31 when it should have been 29 in accordance with the plea agreement. (ECF No. 856 at 17). As noted above, the plea agreement – and the court during its canvass of Fox – specifically note that the offense level could be 29 *or* 31 depending on whether the obstruction enhancement were to apply. Because an offense level of 31 was contemplated by the plea agreement, this argument is without merit. It is, moreover, waived by Fox's valid appellate waiver.

The court has additionally considered all of Fox's contentions not herein addressed and finds them to be without merit.

**IV. Evidentiary Hearing**

Fox requests an evidentiary hearing. The court is not required to conduct a hearing on a § 2255 motion if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Because the motion and files and records of this case conclusively show that Fox is not entitled to relief, his request for an evidentiary hearing will be denied.

## V. Certificate of Appealability

In order to proceed with an appeal, Fox must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski*, 435 F.3d 946, 950-951 (9th Cir. 2006); *see also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001). Generally, a defendant must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Allen*, 435 F.3d at 951; 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Allen*, 435 F.3d at 951 (quoting *Slack*, 529 U.S. at 484). In order to meet this threshold inquiry, Fox has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.*

The court has considered the issues raised by Fox, with respect to whether they satisfy the standard for issuance of a certificate of appealability, and determines that none meet that standard. Accordingly, Fox will be denied a certificate of appealability.

## VI. Conclusion

In accordance with the foregoing, IT IS THEREFORE ORDERED that Fox's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (ECF No. 856) is DENIED.

IT IS FURTHER ORDERED that Fox's request for an evidentiary hearing is DENIED.

IT IS FURTHER ORDERED that Fox is DENIED a certificate of appealability.

The Clerk of Court shall enter final judgment accordingly.

DATED: This 12th day of February, 2020.

                             *Howard D. McKibben*
                             UNITED STATES DISTRICT JUDGE